**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Alliant Energy, Inc., et al.,
Plaintiffs,

and

United States of America, on behalf of
the Western Area Power Administration,
Department of Energy,
Intervenor/Plaintiff

**MEMORANDUM OPINION AND ORDER**
Civil No. 00-2139 ADM/FLN

v.

Nebraska Public Power District,
a public corporation and political
subdivision of the State of Nebraska,

Defendant.

---

Michael C. Krikava, Esq., and Julie H. Firestone, Esq., Briggs & Morgan, P.A., Minneapolis, Minnesota, appeared for and on behalf of the Plaintiffs.

Joan D. Humes, Esq., Assistant United States Attorney, Minneapolis, Minnesota, and C. Max Vassanelli, Esq., Senior Trial Attorney, United States Department of Justice, Washington, D.C., appeared for and on behalf of the Intervenor/Plaintiff.

Frank J. Walz, Esq., Best & Flanagan LLP, Minneapolis, Minnesota, and R. Dennis Wright, Esq., Morrison & Heckler LLP, Kansas City, Missouri, appeared for and on behalf of the Defendant.

---

## INTRODUCTION

On August 2, 2001, the undersigned United States District Judge heard Cross-Motions for Summary Judgment by Plaintiffs Alliant Energy, Inc., et al., ("Plaintiffs") [Doc. No. 21], Intervenor/Plaintiff Western Area Power Administration ("WAPA") [Doc. No. 25], and Defendant Nebraska Public Power District ("NPPD") [Doc. No. 29]. For the reasons set forth below, Plaintiffs' motions are granted and Defendant's motion is denied.

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD OCT 18 2001
DEPUTY CLERK

## BACKGROUND

Plaintiffs bring this action against NPPD for breach of contract. Alliant Energy, Inc., ("Alliant"), and some of the Plaintiffs, are investor-owned public utilities, expressly subject to the jurisdiction of the Federal Energy Regulatory Commission ("FERC") under the Federal Power Act ("FPA"), 16 U.S.C. § 791a, *et seq*. NPPD is a public corporation and political subdivision of the State of Nebraska, engaged in the business of generating, transmitting and distributing electrical power and energy to retail and wholesale customers. *See* Asche Aff. ¶¶ 5, 6. Because NPPD is not a "public utility" within the meaning of the FPA, NPPD itself is not directly subject to FERC jurisdiction. *See* 16 U.S.C. § 824(e). Other Plaintiffs, consisting of cooperative utilities, municipal utilities, public power districts, and an agency of the United States Government,[1] like NPPD, are non-public utilities under the FPA.

All Plaintiffs and NPPD are members of the Mid-Continent Area Power Pool ("MAPP"). MAPP is an association of energy transmission utilities, generators and marketers serving a region encompassing part or all of several midwestern and western states and two Canadian provinces. *Alliant Energy Corp. v. FERC*, 253 F.3d 748, 750 (D.C. Cir. 2001). The Restated Agreement is a contract that governs the membership of MAPP and sets forth the contractual rights and obligations of all MAPP members. *See* Krikava Aff., Ex. 1. The objective of MAPP's Restated Agreement is "to provide for the comparable and efficient provision of transmission service within and contiguous to the MAPP Region on a consistent basis, to realize and further the benefits of coordinated regional transmission planning, and to resolve disputes over the

---

[1] WAPA, of the United States Department of Energy ("DOE") is an Intervenor/Plaintiff.

provision of transmission services." Restated Agreement, ¶ 8.1.

The Restated Agreement is actively regulated by FERC because some MAPP members are public utilities over which FERC has jurisdiction. Accordingly, the contract provides that "[t]his Restated Agreement is subject to the regulation of any regulatory body or governmental agency having jurisdiction thereof." Restated Agreement, ¶ 13.9. The Restated Agreement further states that "[t]o achieve [its] objectives in conformance with FERC policies . . . [it] establishes a regional transmission group . . . ." *Id.* ¶ 8.1. The Restated Agreement specifies that the "Effective Date" of the contract occurs upon the "FERC final order" approving the Restated Agreement with or without modification. *Id.* ¶ 14.1.

Prior to 1994, MAPP's Restated Agreement required its members to provide free, reciprocal transmission service to other members. *Alliant*, 253 F.3d at 750. Amendments in 1994 added a tariff, "Schedule F," which imposed a charge for transmissions among MAPP members, but at a discounted distance-based rate rather than at the individual transmitting members' tariff rates. *Id.* In a decision dated December 15, 1994, FERC accepted the Restated Agreement, including Schedule F.[2] *Id.*

In March, 1996, MAPP filed a proposed Restated Agreement amending Schedule F to include a new section 2.4, which required that a MAPP member purchasing energy from or selling energy to a non-member arrange for extra-MAPP transmission with a border utility and pay such border utility's tariff for the transmission. *See Alliant*, 253 F.3d at 750-51. The new section 2.4 additionally required the member to pay MAPP itself the Schedule F intra-pool

---

[2] Schedule F is incorporated as part of the Restated Agreement at § 8.3.1(a).

transmission charge in order "to compensate Members for third party use of their systems in connection with [the] sales or purchases." *Id.*; Malone Aff., Attach. B, Schedule F, § 2.4. FERC did not accept this proposal before issuing a new rule.

In May, 1996, FERC issued "Order 888," a final rule requiring that each public utility, and utility pool, file an "open access tariff" by a specific deadline, December 31, 1996. *See* Order No. 888, 61 Fed. Reg. 21,540, 21,541 (1996) (codified at 18 C.F.R. § 35.28). Order 888 required power pools, such as MAPP, to file both "reformed power pooling agreements" and a joint pool-wide tariff. *Id.* at 31,728. Under the rule, such reformed power pool agreements must "establish open, non-discriminatory membership provisions and modify any provisions that are unduly discriminatory or preferential." *Id.*

On September 12, 1996, FERC issued a decision accepting MAPP's Restated Agreement filed the previous March, including Schedule F. *See Mid-Continent Area Power Pool*, 76 F.E.R.C. ¶ 61,261, 1996 WL 518530 (1996). However, in this decision FERC warned MAPP that, before December 31, 1996, MAPP must fulfill its obligations to file a joint pool-wide tariff and a reformed power pooling agreement in accordance with Order 888. *See id.* at 62,336. On December 24, 1996, MAPP submitted a filing that contained a "substantially unchanged" Schedule F, including section 2.4. *See Alliant*, 253 F.3d at 752. Effective March 1, 1997, FERC accepted this filing "subject to refund and subject to the issuance of further orders." 78 F.E.R.C. ¶ 61,203, at 61,883, 1997 WL 276508 (1997). Thereafter, some members complained to FERC that MAPP's filing did not conform to Order 888. *See Alliant*, 253 F.3d at 752.

On April 15, 1999, FERC issued an order requiring MAPP to amend Schedule F and

"eliminate tariff provisions that are related to member-restricted services." 87 F.E.R.C. ¶ 61,075, at 61,310, 1999 WL 217072 (1999). Specifically, FERC directed MAPP to eliminate section 2.4, which it found "unacceptable." *Id.* at 61,313. FERC found that section 2.4 of Schedule F created unacceptably inconsistent pricing by charging customers two different rates for moving power within or outside of the MAPP region. *Id.* The tariff provision failed to result in open, consistent and non-discriminatory treatment as required by Order 888. Accordingly, FERC's order of April 15, 1999, required MAPP to revise the pricing of transmission service in Schedule F and to provide refunds for amounts collected in excess of the approved rates, for transactions after March 1, 1997, the effective date of MAPP's pool-wide tariff filing. *See id.* at 61,324-25.

In compliance with FERC's order of April 15, 1999, MAPP stopped charging the tariff under section 2.4 of Schedule F, and calculated refunds retroactively to March 1, 1997. *See* Head Aff. ¶¶ 8-9. Upon MAPP's request pursuant to the revised Restated Agreement, and in compliance with FERC's order of April 15, 1999, all MAPP members, with one exception, adhered to the refund requirement and made refunds to all customers who had been over-billed. *Id.* ¶¶ 12-13. NPPD is the lone MAPP member that did not. *Id.* MAPP's calculations revealed that NPPD had overcollected $2,396,578.63 from other MAPP members under the unacceptable tariff provision. *See* Head Aff. ¶ 11, Ex. 1; Krikava Aff., Ex. 10. NPPD refused to pay the refunds. Plaintiffs bring this suit to compel refunds from NPPD.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Under Minnesota law,[3] the meaning and effect of an unambiguous contract is a matter of law for the court. *Porous Media Corp. v. Midland Brake, Inc.*, 220 F.3d 954, 959 (8th Cir. 2000). Initially, a court must determine whether the contract is ambiguous. *See id.*; *Green Tree Acceptance, Inc., v. Wheeler*, 832 F.2d 116, 117 (8th Cir. 1987) (applying Minnesota law); *In re Turners Crossroad Dev. Co.*, 277 N.W.2d 364, 369 (Minn. 1979). "A contract term is ambiguous if it is reasonably susceptible to more than one interpretation." *Porous*, 220 F.3d at 959. In interpreting a contract, the language is to be given its plain and ordinary meaning. *Brookfield Trade Center, Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). A court must read contract terms in the context of the entire contract, interpreting the contract in a way that gives meaning to all of its provisions. *Id.* The contract must not be construed so as to lead to a harsh and absurd result. *Id.*; *Employers Mut. Liab. Ins. Co. v. Eagles Lodge*, 165 N.W.2d 554, 556 (Minn. 1969).

Here, the contract is not burdened with ambiguity. By agreeing that the "Restated Agreement is subject to the regulation of any regulatory body or governmental agency having jurisdiction thereof," all MAPP members, including NPPD, recognized that FERC would

---

[3] The Restated Agreement's "Choice of Law" section provides that the laws of Minnesota control the contract. *See* Restated Agreement, ¶ 13.8.

exercise its regulatory authority over the contract. Restated Agreement, ¶ 13.9. The contract specifically mentions conformance with FERC policies. *See id.* ¶ 8.1. Furthermore, the Restated Agreement's effective date occurs upon approval by a "FERC final order." *Id.* ¶ 14.1. Thus, as a signatory to the Restated Agreement, NPPD is bound by revisions to the contract ordered by FERC regulation. *See Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 188 (8th Cir. 1988) (holding that, although Inter-City and Boise were not themselves directly subject to FERC jurisdiction, the parties were bound by the FERC decision related to a gas contract over which FERC had jurisdiction); *Holbein v. Austral Oil Co., Inc.*, 609 F.2d 206, 208 (5th Cir. 1980).

In *Holbein*, the contract was "subject to all present and future valid laws and lawful orders of all regulatory bodies now or hereafter having jurisdiction . . . ." *Holbein*, 609 F.2d at 208. The *Holbein* contract language is remarkably similar to the Restated Agreement at issue here. The Fifth Circuit rejected the Holbeins' argument that FERC's[4] rate regulations did not apply to them because FERC lacked jurisdiction over them, holding that the contract itself implicated the regulations. *See id.* at 208. The court stated that the "contract itself provides for the possibility that its terms may be superseded by federal intervention, such as [FERC] rate regulation." *Id.* Here, MAPP's Restated Agreement also provides for the possibility of FERC intervention.

FERC's order of April 15, 1999, nullified certain terms of the Restated Agreement, specifically, section 2.4 of Schedule F. All MAPP members are bound by this revised Restated Agreement. Moreover, the D.C. Circuit held that FERC's refund order did not constitute

[4] FERC's predecessor, the Federal Power Commission, was the agency involved in *Holbein*.

retroactive ratemaking in violation of the FPA. *See Alliant*, 253 F.3d at 753-54.

FERC's decision to order a retroactive refund was within its discretionary authority because FERC may undo what was wrongfully done by virtue of a prior order. *Southeastern Michigan Gas Co. v. FERC*, 133 F.3d 34, 37 (D.C. Cir. 1998) (citing *United Gas Improvement Co. v. Callery Properties, Inc.*, 382 U.S. 223, 229 (1965)). Indeed, FERC's order of April 15, 1999, rejecting MAPP's compliance filing and ordering refunds, was a permissible application of existing law, Order 888, issued on May 16, 1996. *See Alliant*, 253 F.3d at 753. In *Alliant*, the Court of Appeals concluded that MAPP could not have reasonably relied on FERC's September 1996 order to establish that Schedule F, particularly section 2.4, complied with Order 888. *See id.* FERC had expressly cautioned MAPP in its September 12, 1996, acceptance order that the rates would be reexamined under Order 888 after MAPP's compliance filing and repeated this warning when it accepted the December, 1996, filing, *subject to refund and further orders*, effective March 1, 1997. *See id.* at 754. It should have come as no surprise to MAPP members that FERC subsequently reexamined Schedule F, found the tariff was discriminatory under Order 888, and ordered a refund of overcharges paid after March 1, 1997. *See id.* Accordingly, NPPD's contractual obligations under the Restated Agreement mandated a refund upon FERC's nullification of portions of the Schedule F tariff.

NPPD argues that the Restated Agreement does not contain an explicit obligation to pay refunds. However, after the FERC-ordered revisions, the Restated Agreement lacks authority for the tariff monies NPPD collected after March 1, 1997. FERC found the tariff in Schedule F discriminatory under Order 888 and ordered MAPP to eliminate it. This nullification of the tariff

provisions was retroactive to March 1, 1997, as FERC had warned in earlier decisions. *See* 78 F.E.R.C. ¶ 61,203, at 61,883, 1997 WL 276508 (1997) (accepting filing subject to refund and subject to further orders). Absent authority for collecting the tariff charges in the first place, NPPD must pay refunds. For these reasons, NPPD's argument is unpersuasive.

The Restated Agreement is a contract to which NPPD is a signatory. NPPD is bound by the contract regardless of whether FERC has regulatory authority over NPPD itself. FERC concluded that certain tariff provisions of Schedule F did not comply with Order 888 and that MAPP must revise the Restated Agreement.[5] Accordingly, NPPD is contractually obligated to refund the amounts it overcollected under the nullified Schedule F tariff provisions, even if the contract amendments resulted from a FERC order.

[5] As required by section 13.15 of the Restated Agreement, NPPD's Board of Directors approved the revised Schedule F.

## CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) Plaintiffs' Motion for Summary Judgment [Doc. No. 21] is **GRANTED**;

(2) Intervenor WAPA's Motion for Summary Judgment [Doc. No. 25] is **GRANTED**;

(3) Defendant NPPD's Motion for Summary Judgment [Doc. No. 29] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

ANN D. MONTGOMERY
UNITED STATES DISTRICT JUDGE

Dated: October 18, 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd